**REED HOLDINGS INC., Plaintiff,**

v.

**O.P.C. CORPORATION, Deerfield Paper Corporation, R. Carl Chandler, Richard G. Osborne, Armand J. Ledoux, the Black Clawson Company, and Carl C. Landegger, Defendants.**

**No. 87 Civ. 3448 (JMW).**

United States District Court,
S.D. New York.

Nov. 1, 1988.

Peter B. Ellis, Foley, Hoag & Eliot, Boston, Mass., Wendy L. Addiss, Coudert Brothers, 200 Park Avenue, New York City, for plaintiff.

Martin I. Kaminsky, Kevin A. Brousell, Pollack & Kaminsky, New York City, for defendants.

## MEMORANDUM AND ORDER

WALKER, District Judge:

This case is currently before the Court on defendant Richard G. Osborne's ("Osborne") motion to dismiss the claims against him as barred by the applicable statutes of limitations. For the reasons discussed below, the Court dismisses the complaint for failure to comply with Fed.R. Civ.P. 4(j).

This case concerns the sale of all of the outstanding capital stock of Deerfield Specialty Papers, Inc. ("Deerfield Specialty"), an entity wholly owned by plaintiff, to O.P. C. Corp. According to plaintiff, defendants, in purchasing Deerfield Specialty, engaged in a "fraudulent scheme ... to conceal their own lack of capital resources and to deceive ... Reed into proceeding with the agreed-on transaction." Complaint at ¶ 20. Consequently, plaintiff initiated this suit charging Osborne with violations of § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j (1934), Rule 10b–5, 17 C.F.R. § 240.10b–5 (1934), promulgated thereunder, and § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). The plaintiff has also pleaded numerous state law claims against Osborne including breach of fiduciary duty, common law fraud, and breach of contract.

Osborne now moves to dismiss the complaint, pursuant to Fed.R.Civ.P. 12(b)(1), 12(b)(4), 12(b)(5) and 12(b)(6), arguing that plaintiff's federal claims are time barred and should be dismissed and that the court should not exercise pendent jurisdiction over the related state claims once the federal claims are dismissed. Defendant further contends that even if the federal claims are not dismissed, the state law causes of action are either time-barred or fail to state a cause of action. Plaintiff, on the other hand, maintains that each claim was commenced within the applicable statute of limitations and that the state law claim brought under Massachusetts General Laws, c. 93A does state a cause of action. The majority of these claims need not be reached by the Court at this point in time. As discussed below, the Court concludes that plaintiff has not properly served Osborne under the Federal Rules; thus, the complaint must be dismissed as to him.

■ Plaintiff filed the complaint in this action on May 20, 1987. Defendant maintains, however, that because plaintiff failed to serve him properly within 120 days of filing the complaint, as required by Fed.R.~ Civ.P. 4(j), the action must be dismissed. In response, plaintiff contends first that it properly served Osborne on June 11, and second that any deficiencies in that service were cured when it served Osborne for the second time in late December 1987. To address defendant's argument, therefore, the Court must first determine if and when plaintiff correctly served Osborne.

Although plaintiff allegedly attempted to serve Osborne personally, its process server resorted to serving process pursuant to N.Y.Civ.Prac.L. & R. § 308(4) (McKinney 1972) as permitted under Fed.R.Civ.Pro. 4(c). Process under § 308(4), more commonly known as "nail and mail," is effectuated by affixing the summons and complaint to the door of the defendant's place of business or usual place of abode and the subsequent mailing of the summons and complaint to the defendant.

Service under § 308(4), however, may only be employed after "due diligence" has been made to serve defendant in another manner. The requirement of due diligence must be strictly observed, and numerous courts have stringently enforced the due diligence requirement. *Steltzer v. Eason,* 131 A.D.2d 833, 517 N.Y.S.2d 193 (1987); *Kaszovitz v. Weiszman,* 110 A.D.2d 117, 493 N.Y.S.2d 335, 338 (1985); *Blakeslee v. Cochran,* N.Y.L.Jnl., Aug. 21, 1985, at 6, col. 1 (App.Term) ("Because there is a reduced likelihood that a defendant will actually receive the summons when it is served under CPLR 308, subdiv. 4, the requirement of 'due diligence' is to be strictly observed."); *PacAmOr Bearings, Inc. v. Foley,* 92 A.D.2d 959, 460 N.Y.S.2d 662 (1983); *Barnes v. New York,* 70 A.D.2d 580, 416 N.Y.S.2d 52 (1979), *aff'd* 51 N.Y.2d 906, 434 N.Y.S.2d 991, 415 N.E.2d 979 (1980). New York courts have identified the following factors as relevant to the inquiry whether plaintiff exercised due diligence: trying to reach the defendant several times, attempting to locate the defendant at home before or after working hours, going to his place of business during regular business hours, or attempting service at home on weekends.

In the case at bar, plaintiff attempted to serve defendant at his home at 8:30 a.m., 2:20 p.m., and at 6:30 p.m. on three different workdays over as many weeks. After the last attempt, plaintiff's process server allegedly affixed a copy of the complaint and summons to defendant's door and mailed the same to defendant the following day.

■ Plaintiff's efforts to serve Osborne prior to employing nail and mail service cannot be characterized as due diligence. Although several attempts were made to reach defendant at his home, they were made at times when defendant could very well have been either going to or returning home from work. In addition, no attempts were made to serve defendant at his home during the weekends or at his place of business.[1] *Compare, Cooney v. East Nassau Medical Group,* 136 A.D.2d 392, 528 N.Y.S.2d 364, 368 (1988) (process server on several occasions attempted service both at the office and at the defendant's residence, including going to defendant's home on a holiday after he was informed that the defendant would be there); *Kumar v. Ford,* 111 F.R.D. 34, 38 (S.D.N.Y.1986) (service attempted in evening after 8:00 p.m. on two occasions and at 8:00 a.m. on another); *State Higher Education Services Corp. v. Starr,* 115 A.D.2d 828, 495 N.Y.S.2d 786 (1985) (service attempted on Saturday evening);[2] *Mitchell v. Mendez,* 107 A.D.2d 737, 484 N.Y.S.2d 98, 99–100 (1985) (service attempted on a Saturday). Plaintiff claims that defendant had actual notice after the process server allegedly made an inquiry of defendant's presence

---

1. It appears from the affidavit of Peter B. Ellis that plaintiff knew, or with minimal effort could have obtained, the location of Osborne's place of business so that service could have been attempted there. Aff. at ¶¶ 4–5.

2. Curiously, plaintiff cited the *Kumar* and *Starr* cases in support of its position.

from a neighbor.[3] Actual notice, however, is not curative of faulty service of process. *Kaszovitz,* 493 N.Y.S.2d at 338. Indeed, under facts remarkably similar to those of the case at bar, the court in *Barnes,* 416 N.Y.S.2d at 54, held service was not properly made and concluded, a "process server's unsuccessful attempts to find the [defendants] at home when he sought to serve them during normal working hours should have indicated to him that they were working people. Yet there was no attempt to effect personal service in accordance with CPLR 308 (subd. 1 or 2), either at a time when one might reasonably expected such individuals to be at home, prior to leaving for work or after working hours, or at their place of business."

Accordingly, the Court holds that plaintiff did not exercise due diligence in attempting to serve Osborne. Thus, plaintiff's service of process in June of 1987 was invalid.

Plaintiff filed the complaint in this action on May 20, 1987. Proper service on Osborne was not effectuated until late December 1987,[4] well outside the 120 day filing period established in Rule 4(j). Defendant argues that this failure must lead to dismissal of the complaint against him. Rule 4(j) became effective on February 26, 1983, and provides:

> If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiate with notice to such party or upon such motion.

The only way plaintiff can avoid dismissal of his federal claims, therefore, is upon a showing of good cause. Plaintiff has failed, however, to persuade this Court that it had good cause for the delay in serving its complaint.[5]

Courts have identified several factors that should be considered when determining whether a plaintiff has made a showing of good cause. *See, e.g., Gordon v. Hunt,* 116 F.R.D. 313 (S.D.N.Y.) *aff'd* 835 F.2d 452 (2d Cir.1987), *cert. denied* —— U.S. ——, 108 S.Ct. 1734, 100 L.Ed.2d 198 (1988). Most important among them, however, is the cause for the delay in service, namely did plaintiff make reasonable efforts to effectuate service or was untimely service the result of inadvertence. Some courts, although not all, also examine whether the defendant has been prejudiced by the failure to serve in a timely manner. Finally, whether plaintiff has requested an extension of time to serve pursuant to Fed. R.Civ.P. 6(b) has also been considered by courts.

Defendant contends that plaintiff has not shown good cause because (1) the affidavit of plaintiff's process server was clearly deficient, (2) by the summer of 1987, Reed was on notice that defendant claimed he had not been served, (3) plaintiff did not seek an enlargement of time to serve under Rule 6(b), and (4) defendant will be prejudiced by a holding other than dismissal since the statutes of limitations on Reed's claims have run. Plaintiff responds to these contentions by arguing that it acted diligently and Osborne had notice of the case and has suffered no prejudice as a result of untimely service.

Plaintiff has failed to convince this Court that it exercised reasonable efforts to serve Osborne within the 120 day period. While the 120 day period was still running, plaintiff was informed by counsel for Black Clawson that Osborne was claiming that he

---

**3.** Osborne claims that he was not on notice that he was a defendant in this action until late November or early December 1987.

**4.** Neither party disputes the adequacy of this service.

**5.** Plaintiff's papers on this score are woefully deficient and attempt to create confusion concerning the proper standards to apply to a motion brought pursuant to Rule 4(j). For example, plaintiff cites in support of his good cause argument cases under the predecessor to Rule 4(j) which applied a different standard than is currently the law. At the very least, plaintiff was obligated to inform the Court that these cases were not decided under Rule 4(j).

had not been served. In response to this knowledge, plaintiff simply asked its counsel whether Osborne had been served. No attempt was apparently made to contact Osborne, plaintiff did not seek relief under Rule 6(b), and service was not made on Osborne again before the 120 day period ended. Plaintiff did nothing until Osborne filed a motion to dismiss the complaint on December 15, 1987. Only then did plaintiff serve Osborne again, and plaintiff did so without requesting leave from the Court to serve Osborne after the 120 day period had passed.

At very little effort and expense to plaintiff, Osborne could have been served properly within the 120 day period. *Accord, Quann v. Whitegate–Edgewater*, 112 F.R. D. 649, 662 (D.Md.1986) ("once counsel became aware of a service problem, there was no reason why service could not have been made within the remaining time."). There is no legitimate explanation for plaintiff's failure to serve Osborne in a timely manner. Plaintiff is not contending that Osborne evaded service or that it was unaware of Osborne's address, nor did plaintiff make repeated, but unsuccessful, attempts to serve Osborne. Instead, plaintiff only served him once, and an examination of the process server's affidavit would have revealed that, at the very least, the sufficiency of that nail and mail service was questionable under New York law. Because the Court is convinced that plaintiff did not exercise reasonable efforts to serve Osborne properly within the 120 day period specified in Rule 4(j), plaintiff's complaint must be dismissed without prejudice.

The Court recognizes that it has not yet addressed the bulk of the issues raised in defendant's motion.[6] Those issues are no longer before this Court since Osborne was not properly served. If plaintiff chooses to refile and serve the complaint properly on Osborne and the latter wishes to renew its

motion, the Court, upon agreement of the parties and to expedite the resolution of the outstanding issues in this case as to defendant Osborne, will entertain a renewal of defendant's motion upon the papers already submitted as supplemented by letters to the Court.

 Accordingly, the Clerk of the Court is directed to dismiss the complaint as to Defendant Richard Osborne without prejudice.[7]

SO ORDERED.

---

6. Had defendant recognized the dispositive nature of plaintiff's failure to comply with Rule 4(j) a great deal of work for both sides could have been avoided.

7. The Court, of course, is mindful that plaintiff may well be unsuccessful in bringing some, if

not all, of these claims again because of the applicable statute of limitations. Nonetheless, the fact that plaintiff's claims may now be time-barred does not effect the application of the requirements of Rule 4(j). *Delicata v. Bowen*, 116 F.R.D. 564, 566–67 (S.D.N.Y.1987).